# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JALIL COOPER, | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | No. 16-4235 |
| | : | |
| v. | : | |
| | : | |
| M. QUIGLEY, et al., | : | |
| | : | |
| Defendants. | : | |

**McHUGH, J.**                                                                                                **March 16, 2020**

## MEMORANDUM OPINION

This is a civil rights action brought by Jailil Cooper, a prisoner in state custody who alleged that he was the victim of excessive force, denial of medical care, and state law assault and battery. ECF 52. The case was tried to verdict, and the jury found against Mr. Cooper on all his claims. Now proceeding pro se, Cooper moves for posttrial relief, alleging a number of errors in the conduct of the trial.[1] For the reasons that follow, his motion will be denied.

*1. Failure to charge jury on spoliation of evidence.* Plaintiff first contends that the Court committed error in its instructions on spoliation of evidence. ECF 103, at 5. As an initial matter, it bears mention that the jury was instructed on the doctrine of spoliation, just not in the way that Plaintiff would have preferred. The record showed that surveillance cameras existed in various locations in the correctional facility where Mr. Cooper alleged he was assaulted. The Philadelphia Prison System had a policy requiring that videotape be preserved in connection with

---

[1] Two attorneys from the firm of Cozen & O'Connor—Rachel Ward and Lawrence Walker—provided pro bono representation of Mr. Cooper through verdict, with Ms. Ward taking the lead at trial. The Court deeply appreciates their zealous representation of Mr. Cooper.

any incident alleging excessive force, with 10 minutes of video to be preserved before the incident, the incident itself, followed by preservation of an additional 10 minutes after the incident. ECF 73, at 1.

Here, the City produced an 11-minute clip of video from one of the locations where Mr. Cooper says he was assaulted. In simple mathematical terms, because the clip was less than 20 minutes long (10 minutes of video on either side of an incident), the City violated the literal terms of its policy with respect to preservation of evidence. However, testimony at trial demonstrating that the "policy" was more of a "guideline," and was not strictly followed in every instance. For example, a supervisory officer testified that if an area of the institution was vacant before an incident occurred, the officers harvesting the video might not preserve video footage that would show just an empty hallway.

The jury was instructed that if it concluded the City had breached its internal policies with respect to the preservation of evidence, it could, but was not required to, draw an inference that any evidence not preserved "would have been helpful to the plaintiff or detrimental to the defense." Transcript of Jury Charge at 8, Cooper v. Quigley, No. 16-4235 (Jan. 29, 2020) (on file with the Court). I am confident that this instruction constituted a reasonable exercise of my discretion based on the record in the case, and Mr. Cooper's counsel was able to argue the spoliation inference issue to the jury in closing.

Mr. Cooper further alleged that he suffered other physical attacks by correctional officers in other areas of the prison. The parties disputed when Plaintiff first alleged such attacks. The incident for which video was preserved occurred on December 12, 2015, and there was documentary evidence in the record that Mr. Cooper complained of that alleged assault shortly thereafter. With respect to the other alleged assaults, according to the defense, Mr. Cooper did

2

not raise them until he filed grievances in late April 2016 in advance of filing the civil action. At the pretrial conference where the issue of spoliation was addressed as part of the discussion concerning motions *in limine*, the City credibly established that the surveillance camera system ran on 30-day loops, and no video could be harvested for preservation more than 30 days after any alleged incident. Based upon that showing by the defense, which could not seriously be challenged by counsel for Plaintiff, I concluded that any further inference of spoliation was dependent upon when the jury found Mr. Cooper to have first alleged the additional assaults. Accordingly, the jury was instructed that it could also draw a negative inference against defendants for failure to preserve evidence if it first found that Mr. Cooper "did in fact tell prison officials these incidents happened in other areas of the prison close in time to the events." *Id*. at 8. Once again, I am confident that this was a reasonable exercise of discretion based upon the record in the case.

    *2. Failure to allow certain cross-examination of defense witness.* Next, Mr. Cooper argues that the Court committed error when it limited cross-examination of one of the correctional officers accused of assaulting him. Specifically, when Correctional Officer Butler was testifying, counsel for Plaintiff sought leave to cross-examine him with deposition testimony he had given in another civil rights case. In the other case, when Officer Butler was questioned as to whether he had been named in any other lawsuit, he acknowledged Mr. Cooper's case, but further testified that it had been dismissed as frivolous. I declined to allow such cross-examination for a variety of reasons. For one, Officer Butler is a line officer without any supervisory responsibility, and one of seven defendants in this case, which also included a lieutenant and a sergeant. Moreover, Mr. Cooper's case was pending for three-and-a-half years before it proceeded to trial, and the degree to which counsel from the City Solicitor's office

3

briefed individual defendants as to its ongoing status is unclear. Finally, although the answer was incorrect and given under oath, I did not see how such a discrepancy had material bearing on any issue in the case. I therefore prohibited the questioning as tangential and potentially confusing. I am not persuaded that the ruling constituted an abuse of discretion, and in any event a new trial would not be warranted based only upon such a ruling.

*3. Failure to prevent disclosure of Mr. Cooper's criminal record.* Next, Plaintiff argues that his criminal record was improperly brought to the attention of the jury during cross-examination. This argument lacks merit. Mr. Cooper is serving a life sentence for murder. Under Rule 609(a)(1)(A) of the Federal Rules of Evidence, Defendants had an absolute right to impeach him with his felony record. Notably, counsel for Defendants agreed before trial not to mention the nature of his conviction before the jury and kept that commitment at trial. The passing mention of Mr. Cooper's felony record during cross-examination was entirely proper.

*4. Failure to strike portion of Defendants' closing argument.* The final error alleged by Mr. Cooper concerns an argument made by defense counsel during closing statements. Specifically, counsel for the defense commented upon the fact that when plaintiff's counsel closed to the jury, she did not cite Mr. Cooper's testimony, but rather to other evidence in the record in asking the jury to rule in favor of her client. After defense counsel concluded, Plaintiff's counsel asked for a sidebar.[2] Counsel objected that this type of argument constituted reverse "vouching," and improperly brought counsel's personal beliefs about credibility to the attention of the jury.

---

[2] At trial, the defense argued that Plaintiff's counsel waived any objection by waiting until after the defense closing had concluded before raising the issue. I declined to find waiver, because one of the protocols followed by experienced trial lawyer's is to reserve such objections until an opponent's closing statement is concluded simply as a matter of professional courtesy.

Although I agreed that there was some merit to the objection, I was persuaded that any misstep by defense counsel was not flagrant. To remedy any possible prejudice, rather than explicitly criticize defense counsel before the jury, I incorporated into the Court's charge language meant to neutralize any effect from the argument. In commenting on what may properly be considered as evidence, the jury was instructed: "What [evidence] does not include are the arguments of the lawyers or the objections, [or] their opening statements. Lawyers will joust sometimes back and forth about tactics. You'll notice a sleight of hand here, a tactic there. That's just what lawyers do. Right? That's their role. But that's not evidence." *Id.* at 28. I noted that juries "don't decide the case based on lawyers' tactics," but with what they "conclude the facts are by a preponderance of the evidence." *Id.*

Later in the charge, the jury was instructed to "take each witness as they come," and to "accept some, all, or none of what it is that the witness has to say." *Id.* at 32. They also were instructed that "[t]he only thing that matters is what you believe, members of the jury," and that "[m]y belief, counsel's belief, is not relevant to the case." *Id.* I closed by noting that "[w]hat matters is what you conclude from the testimony that you have heard." *Id.*

Furthermore, any error during the trial was harmless because the inconsistency between Plaintiff's allegations and the record in the case was vast, fatally undermining the credibility of Plaintiff's case. The events giving rise to this case began with Plaintiff admittedly attacking another inmate because Plaintiff objected to being placed in the same cell as that inmate because he feared the inmate would sexually assault him. That assault explained why Mr. Cooper was the focus of the correctional officers' attention. Mr. Cooper alleged that he was then the victim of brutal and sustained assaults at the hands of several correctional officers. The video that was preserved by the City was presented to the jury and recorded events immediately after one of the

5

alleged assaults. But the videotape did not reveal any assault, and Plaintiff can be observed standing unassisted and calmly interacting with the correctional officers who had purportedly just attacked him in brutal fashion, behavior inconsistent with Plaintiff's allegations of assault. The assaults described by Mr. Cooper would necessarily have resulted in marks and bruises. Yet, a photograph of Plaintiff taken as part of standard procedure before he was placed in administrative segregation, and shortly after he was allegedly assaulted, does not demonstrate any injury, let alone injuries consistent with a sustained physical attack. Two nurses employed by independent contractors providing medical services to the prison examined Plaintiff at different times and documented no injuries. Moreover, because Plaintiff admitted resisting officers' orders at various points, prison rules allowed the correctional officers to use pepper spray, yet the officers declined to deploy it. All the correctional officers who testified presented in a calm and credible manner and explained in a rational way their actions at each step of their interaction with Mr. Cooper, including what was depicted in the video seen by the jury. The City provided a report reflecting that Mr. Cooper refused an opportunity by Lt. Baldwin, a supervisor, to document the specifics of the first assault he alleged.

Counsel for Plaintiff showed admirable tactical judgment in trying to minimize damage to the case caused by the mismatch between Plaintiff's allegations and the available record. They had only splinters of evidence from which to try to construct a case. But given the record in this case, none of the purported errors would have resulted in a different outcome at trial.

Plaintiff's motion for posttrial relief therefore will be denied.

/s/ Gerald Austin McHugh
Gerald Austin McHugh
United States District Judge